Mechanics' Bank *vs.* Livingston, impleaded with Ballard.

Where a bank discounts a draft for the accommodation of the drawers, *before* it is accepted, its *subsequent* acceptance by the drawees before maturity, binds them, in the same manner as though they had accepted it *before* discount.

The acceptance itself imports a consideration; and *it seems*, cannot be avoided, except in cases where a guaranty may be avoided which is expressed to be for *value received*.

The acceptors of a draft, *it seems*, are in the same position as the makers of a note; and their liability must be governed by the same rules.

Where an accommodation draft is payable at a future day, and there is no valid agreement to accept, the drawees may refuse acceptance; although they have been in the habit of accepting other similar paper; and although the bank discounts the paper before acceptance. upon the faith that it will be accepted according to the usual course of dealings between the bank and the drawees.

But if the drawees *actually accept the draft before maturity*, they cannot allege that their acceptance was without consideration. By accepting the draft the bank is postponed, and a forbearance is necessarily granted, which is a sufficient consideration for the acceptance.

The plaintiff's bank discounted a draft drawn by J. P. & I. T. B. upon L. & B. who were partners, in favor of M., before acceptance, for the accommodation of the drawees. It was sent forward to L. & B. for acceptance, and was actually accepted, before maturity, by B. in the name of L. & B. with-

Mechanics' Bank *v.* Livingston.

out the knowledge of L. The partnership between L. & B. had been dissolved before the draft was accepted, but no notice of the dissolution had been given to the bank. By the terms of the dissolution L., only, was authorized to use the partnership name. Several prior drafts, discounted before acceptance, by the bank, (of which this was one of a series,) had been accepted by L. in the partnership name of L. & B. ; but L. was under no legal obligation to accept, while B., his partner, was one of the drawers. *Held* that the bank must be considered as having had dealings with the firm of L. & B., within the rule requiring actual notice of the dissolution ; and that the unauthorized acceptance of the draft in question, by B. in the partnership name of L. &. B. was binding upon the firm ; the bank having had no actual notice of the dissolution or of any want of authority in B. to make the acceptance.

THIS was an action by the plaintiff against the defendants as acceptors of a draft, of which the following is a copy :

"$600.                                    *Syracuse, Dec.* 27, 1858.

Two months after date, pay to the order of E. B. Meeks, esq., cashier &c., six hundred dollars, value rec'd, and charge the same to the account of          J. P. & I. T. BALLARD.
To Messrs. Livingston & Ballard, 46 Water st. New York."

Written across the face as follows :

          "Accepted.          LIVINGSTON & BALLARD.'

It appeared on the trial that originally J. P. Ballard was a member of the firms "J. P. & I. T. Ballard," and "Livingston & Ballard." J. P. & I. T. Ballard were clothing merchants in Syracuse, and commenced business in 1853. It did not appear when, if ever, this partnership was finally dissolved. Livingston & Ballard were grocery merchants in New York city, and the immediate successors of "Livingston, Ballard & Co." this latter firm having dissolved in 1856, or the forepart of the year 1857. This latter firm was composed of the defendants and one Mitchell, and the change to "Livingston & Ballard" was the result of the retirement of Mitchell from the firm. J. P. Ballard, one of the firm of Livingston, Ballard & Co., in 1854 made a verbal arrangement with the plaintiff's bank, that his firm of Livingston, Ballard & Co., should accept the draft of J. P. & I. T. Ballard drawn on them to the aggregate amount of $2000, pay-

able in two months, and in sums of $1000 at one time, for the accommodation of J. P. & I. T. Ballard, to be received from time to time as they respectively became due while the arrangement lasted. Drafts were drawn on Livingston, Ballard & Co., at every two months by J. P. & I. T. Ballard, for the $2000 in sums of $1000, at one time, and were regularly accepted by Livingston, Ballard & Co. during the continuance of that firm ; and after the dissolution of that firm, by their successors, "Livingston & Ballard," the defendants in this action, until the dissolution of this last firm, in February, 1858. The proceeds of the new drafts supplied "Livingston & Ballard" with the funds to pay the preceding drafts, as they respectively matured, in New York city. These drafts were generally discounted by the plaintiff before acceptance, and sent forward to New York by the plaintiff to the Continental Bank, and by the latter bank were presented to Livingston & Ballard for acceptance, and were accepted by them and paid with the funds supplied by new drafts drawn in the same way. After the dissolution of the firm of Livingston & Ballard, which took place February 1st, 1858, there was a change made in the mode of accepting these drafts. When the drafts were presented for acceptance to Mr. Ballard, he took them to Mr. Livingston, and procured him to write the acceptances, which he continued to do in person until the draft in question, of $600, (one of the series, being reduced by payments to that amount,) was presented for acceptance, and that was accepted in the handwriting of J. P. Ballard, without consultation with Livingston, and without procuring the actual consent of Livingston to the acceptance. This $600 draft, like the preceding drafts, was discounted by the plaintiff before acceptance, at the request of the drawers. The plaintiff never had actual notice of the dissolution of the firm of Livingston & Ballard, or of any want of authority in J. P. Ballard to accept the drafts in the firm name of Livingston & Ballard, until after they had discounted it and it had been accepted by Ballard in the name

of Livingston & Ballard. On the dissolution of the firm of Livingston & Ballard, February 1st, 1858, by an agreement between them, the property and assets of the copartnership were transferred and assigned to Livingston, who alone was authorized to close up its business. The plaintiff knew that these drafts were made for the accommodation of the drawers, and were discounted for their accommodation. It did not appear that the plaintiff had any dealings with Livingston & Ballard, except with respect to these drafts. It did not appear that the arrangement made by Ballard with the bank that Livingston, Ballard & Co. should accept these drafts, was ever in fact communicated to Livingston.

The moneys obtained from the plaintiff by the discount of the draft in suit were applied in payment of the preceding draft for $600, which was accepted by Livingston himself in the name of Livingston & Ballard; and said draft was actually taken up and canceled, with the funds obtained by the discount of the draft in suit.

Livingston knew that these drafts were discounted by the plaintiff in renewal of former drafts for the accommodation of the drawers; and he accepted what were accepted by him, with knowledge of the object and use to which they were applied.

The plaintiff discounted the draft in suit, like the preceding drafts, in the belief and expectation that it would be duly accepted by Livingston & Ballard according to the course of dealings theretofore had between them.

*Sedgwick, Andrews & Kennedy,* for the plaintiff.

*Sheldon & Brown,* for the defendant Livingston.

MORGAN, J. The acceptances before as well as after the dissolution of the firm of Livingston & Ballard, were accommodation acceptances, so far as Livingston was concerned, and he was under no legal obligation to continue them; and as between himself and Ballard, the acceptance in question was, I think, without authority.

But there is no evidence that satisfies me that the plaintiff had notice of the dissolution of the firm, or of the circumstances under which the acceptances were made after its dissolution. And it makes no difference that this is accommodation paper, so far as the liability of the acceptors to the bank is concerned. (*Grant* v. *Ellicott,* 7 *Wend.* 227. *Edwards on Bills,* 430.) If the acceptance had been made *before the bank discounted the draft,* I think it quite clear upon authority, that the plaintiff might recover against the acceptors, in this case. In *Vernon* v. *The Manhattan Co.* (22 *Wend.* 183,) the firm of Wm. Vernon & Co. made a note for the accommodation of John A. Moore, which the bank discounted and which was repeatedly renewed, and once after the dissolution of the firm, by P. W. Vernon one of the firm, without the authority of his copartner, William Vernon. It was there held that the bank must be considered as having had dealings with the firm, within the meaning of the rule requiring an actual notice of dissolution. In that case, William Vernon resisted a recovery on the ground of the dissolution of the firm previous to the making of the note. The chancellor, in his opinion (p. 191) says : "In the present case there was a continual credit in the bank for fourteen months previous to the dissolution of the firm, by eight successive renewals of the note made by the partnership and discounted on the application of Moore, the payee, and as the eighth renewal, although a short time after the dissolution of the copartnership, was by a note in the name of the firm precisely in the same form as the previous note, it was evident it was a case in which the firm would be liable to the bank, unless the bank had actual notice that the copartnership was dissolved at the time the last renewal took place."

The acceptors of this draft are in the same position as the makers of a note, and their liability must be governed by the same rules. Here was continual credit in the bank on the faith of the copartnership of "Livington & Ballard," through 1857 and most of the year 1858, by successive discounts of

drafts drawn by the firm of J. P. & I. T. Ballard, and discounted at the request of the drawers and for their accommodation, and accepted by the defendants. This last draft of $600 was in the same form, and for the same time as the former drafts which the firm had accepted without objection.

I think, within the case above cited, the acceptors are liable, unless their liability is affected by the circumstance that the plaintiff in fact discounted the draft *before acceptance.*

If there was an arrangement between Ballard and Livingston that Livingston and not Ballard should make acceptances, in order to bind that firm, that cannot affect third persons who took the paper without notice of it. (*See Bronson, J. in The Bank of Rochester* v. *Monteath,* 1 *Denio,* 406.) It is, however, claimed by the counsel of Livingston, that the bank discounted the draft upon the sole credit of the drawers, not upon the credit of the acceptors; for in fact, it was not accepted when the bank parted with its money. It is therefore insisted that the bank is in no better position than the drawers, and must abide by their title ; and as the drawers are the principal debtors and could not recover against their accommodation acceptors, it is insisted that no right exists in the bank to call upon the acceptors.

I agree with the counsel that Livingston was not bound to accept the draft ; and if it could be shown that he consented to the verbal agreement made by Ballard with the bank to accept them, that it would not be available to the plaintiff under the provisions of the statutes of this state. (1 *R. S.* 768, §§ 6, 7, 8, 9, 10, 11. 5 *Duer,* 473, 573.)

But here is an *actual acceptance,* not a mere parol agreement to accept. If it had been made *before* the paper was discounted, I have endeavored to show that it would have been binding upon Livingston & Ballard. Does the circumstance that the defendants had not accepted the paper when it was discounted, change the rights of the parties? I think not. Suppose the defendants had given their note for the draft, payable to the plaintiff, instead of accepting the draft.

It would have been equivalent to an agreement to be answerable for the debt of a third person, expressed to be for value received, for an acceptance implies a consideration (*Chitty on Bills*, 324.  12 *Wend.* 593.  4 *Dana,* 352,) and can no more be contradicted than the words "for value received," in a written guaranty.

A total want of consideration may be set up to defeat a promissory *note* in the hands of a subsequent holder with notice ; and perhaps an acceptance may be defeated in like manner.  (*Chitty on Bills,* 91.)  But I cannot see that this rule has any application to a case like the present ; for here the very act of acceptance is an undertaking to pay the demand, as much as though it had been the note of the acceptors or their guaranty expressed to be for value received.  And in such a case it will not be admitted that the maker of the note, or the guarantor, could be heard to say that in truth and in fact the undertaking they had made was without consideration.  By accepting a bill of exchange the acceptors admit that they have funds of the drawers in their hands to pay it. Perhaps in the case of an accommodation acceptance, this implication is not to be indulged in ; still, I think in such a case the acceptors in substance agree that they will see to it that the drawers will put them in funds to take up the paper. I do not see what further the holder of an acceptance has to do with the state of funds or dealings between the drawers and acceptors.

But if an actual consideration is necessary to support the acceptance in this case, it is not difficult to find one in the transaction itself.

Suppose the drawers had refused to accept, then the plaintiffs were entitled to reasonable notice of the non-acceptance, whether the drawers had effects in their hands or not, for the purpose of enabling them to secure themselves against the drawers.  (*Nider* v. *Tucker,* 7 *Mass. Rep.* 449.)  And in case of non-acceptance, the drawers would be liable immediately.  (*Byles on Bills,* 139.)  But by accepting the draft

the bank is postponed, and a forbearance is necessarily granted, which is a sufficient consideration for the acceptances.

It seems to me that the acceptors are bound to pay the paper they accept, in the case in which they would be holden to pay their promissory note, given upon the same consideration ; and that their defense must be circumscribed within the same limits. (*See Edwards on Bills*, 430.) In this case Livingston stands upon no better ground than he would have stood upon had the paper been discounted before acceptance ; and his liability is to be determined by the same rules which govern the liability of copartners when their paper continues to be taken by their customers after dissolution but before notice of it.

The result is, that judgment must be given for the plaintiffs, against the defendant, for the amount of the draft.

[ONONDAGA SPECIAL TERM, January 31, 1860. *Morgan*, Justice.]

---

The above decision was *affirmed*, at a general term held at Syracuse, April 2, 1861, present Justices Bacon, Allen, Mullin and Morgan ; when the following opinion was delivered by Justice MULLIN.

*By the Court*, MULLIN, J. The defendants were accommodation acceptors of the draft in suit for the firm of J. P. & I. T. Ballard, and the plaintiff was aware of that fact when they received and discounted the draft. In the *Commercial Bank of Lake Erie* v. *Norton & Fox*, (1 *Hill*, 501,) it was decided that as a general rule the acceptor of an accommodation bill of exchange must, in respect to the holder, be regarded as principal, and cannot defend on the ground of want of consideration between him and the drawer, and this though the holder took the bill from the person to whom it was lent, with full knowledge of its character.

We must assume, for the purpose of this case, that the plaintiff is a bona fide holder of the draft, for value paid.

In order to hold the defendant Livingston responsible, the plaintiff must show that the acceptance was a binding contract as against the firm of which he was a member. The grounds upon which the plaintiff relies to establish this liability, are that they had been accustomed to deal with the firm of Livingston & Ballard, and although said firm may have been dissolved when the draft in question was accepted, yet they had no notice of such dissolution, and that until the receipt of such notice, Livingston was bound by the acts of Ballard.

In *Vernon* v. *The Manhattan Company*, (22 *Wend*. 183,) the action was brought by the Manhattan Company against the Messrs. Vernon as partners, on a note made by one of them after their dissolution and after notice thereof had been published in a newspaper taken by said company. The principal question in the case was whether actual notice of dissolution must be brought home to the company, in order to discharge the retiring partners. There had been several renewals of the notes given for the original loan, and the note in suit was one of such renewals. It was decided by the court of errors that the company had dealings with the firm of the Messrs. Vernon, so as to entitle it (the company) to actual notice of the dissolution, and until such notice was proved, the Messrs. Vernon were liable on paper made in the name of the firm.

The only difference between the case cited and the one in hand is, that in the former the copartners were makers of a note ; in this they are acceptors. The legal rights and liabilities of the two are substantially alike.

It does not appear how many drafts were drawn and accepted by the firm of Livingston & Ballard before the one in suit, but I conclude there must have been as many as eight or ten ; and if so, the evidence of dealings would be as conclusive in this case as in the case cited.

The judge finds that the plaintiff did not have actual notice of the dissolution of the firm of Livingston & Ballard

until after the discount of the draft in suit. There is a conflict of evidence on this question of notice, and we cannot, for that reason, disturb the finding, whatever our individual opinion might be, as to the weight of the evidence on this question.

We must hold the law to be, in obedience to the authority of the case cited, that the firm of Livingston & Ballard were bound by the acceptance although made after dissolution.

There is still one other question in the case which requires examination, and that is whether the acceptance was within the scope of the partnership, so as to authorize one partner to bind his copartner; and if not, whether the acts of Livingston have been such as to estop him from disputing the authority of Ballard to bind him by an acceptance.

It may be that as the law presumes a consideration between the holder and acceptor of a draft, even when it appears that it is known to the holder to be an accommodation draft, the question suggested is thereby disposed of. However that may be, I propose briefly to examine the question.

In the absence of all evidence as to the precise terms of the partnership, I apprehend the presumption of law would be that it was not within the scope of a copartnership firm for the purpose of carrying on the grocery business to accept drafts for the accommodation of third persons. (19 *John.* 154. 4 *Seld.* 408.) If I am right in this, then had the copartnership been in life when the draft in suit was accepted by Ballard, Livingston was not bound.

In this case the plaintiff knew the acceptances were for the accommodation of the drawers, and it was therefore incumbent on them to prove such facts as would make Livingston responsible. In order to show the assent of Livingston to the use of the firm name upon the draft in question, it is proved that an agreement was entered into between Ballard, one of the firm of Livingston, Ballard & Co. (who was also a member of the firm of J. P. & I. T. Ballard) with the plaintiff, that said firm of L. B. & Co. should accept the drafts of J. P. & I. T. Ballard for their accommodation. That the firm of

Livingston & Ballard succeeded that of Livingston, Ballard & Co., and was composed of the same persons, except one Mitchell, who retired.    The latter firm continued to accept until its dissolution, in February, 1858, when Livingston was authorized to close the business of the firm ; and it was agreed that Ballard should not use the name of the firm after the dissolution.    Ballard took the drafts which came down, and sent forward for acceptance and presented them to L. who accepted them in the name of the firm.    The one in suit was accepted by B. in the name of the firm, without the express assent of L.    The judge finds that L. knew that these drafts were discounted by the plaintiff in renewal of former drafts for the accommodation of the drawees, and that he accepted what were accepted by him with knowledge of the object and use to which they were to be applied.    By this I understand the learned judge to mean, that Livingston was cognizant of the fact that Ballard was accepting drafts for the accommodation of J. P. & I. T. Ballard in the name of Livingston & Ballard, and that Livingston himself accepted the paper of J. P. & I. T. Ballard with knowledge that the said drafts were to be discounted by the plaintiffs and the avails applied in payment of former acceptances.

In *Butler* v. *Stocking*, (4 *Selden*, 408,) it was held competent evidence to bind one partner of a firm on notes signed by the other partner in the name of the firm, as surety for the principal debtor, that some three years before, the partner repudiating the act of his copartner was informed of the purpose for which his copartner was using the copartnership name, and that he said it was all right.    The evidence in this case, therefore, was competent to be given upon this issue, and the judge has found that the partner using the firm name was authorized by his copartner to use it, and therefore both are bound.

It cannot alter the principle that the draft in suit was signed by Ballard and not by Livingston, and that it was subsequent to the dissolution.    There could be no controversy

In the matter of Bonaffe.

as to Livingston's liability, if he had signed the draft; and it is because the other signed, that he disputes his liability; and it is to establish that liability that the evidence referred to has been given.

The plaintiff, having so often received the acceptances of Livingston & Ballard, written first by one member of the firm and then by the other, was authorized to infer that it was understood and assented to by both partners that the firm should accept for the accommodation of the drawers; and it seems to me that Livingston should be estopped from disputing his liability.

It is not entirely clear whether the avails of the drafts in suit were applied in payment of a preceding draft accepted by Livingston in the name of the firm; yet I think that is the legitimate inference from the evidence. If it were so, Livingston has neither a moral nor legal excuse for repudiating this acceptance.

I think the judgment ought to be affirmed.

Judgment affirmed.