Wylie agt. Speyer.

LEARNED, P. J., and BOOKES, J., concurred.

---

## SUPREME COURT.

FANNY D. WYLIE agt. GUSTAVUS SPEYER and others.

*Stolen coupons — Title of true owner — Bona fide purchaser — Where the action is for equitable relief only, the judgment must be for equitable and not legal redress — Foreign law — Conflict in law.*

Where coupons of railroad bonds, which had been stolen in this country, were purchased after maturity in Frankfort-on-the-Main, and sent here for collection, and this action was brought by plaintiff, who owned the coupons at the time they were stolen, to restrain payment to the purchasers by the railroad company:

*Held*, that under the law of this state, though there is nothing to impeach the good faith of the purchasers, that transaction, the coupons being over due, cannot avail to invest them with a title without the assent of

the plaintiff, the true owner, from whom they were stolen; and her title to the coupons is unaffected by such purchase. The law and usage prevailing at Frankfort being in conflict with the law of New York upon this subject, the latter must prevail, the plaintiff and one of defendants being residents of New York, and the property itself, the subject of the action, being brought within this jurisdiction.

*Special Term, August,* 1881.

*Holmes & Adams,* for plaintiff.

*Evarts, Southmayd & Choate,* for defendant Bonn.

VAN VORST, *J.*— The plaintiff was the owner of six mortgage bonds of the Pacific Railroad Company of Missouri, of $1,000 each, with coupons attached, representing the interest to fall due upon the bonds at intervals of six months, each coupon being for the sum of thirty dollars.

The bonds, with coupons annexed, were on deposit in the National Bank of Northampton, in the state of Massachusetts, for safe keeping. On the 28th day of January, 1876, the bank was entered by burglars, and a large amount of property was stolen therefrom, including the six bonds, with coupons, of the plaintiff.

Coupons, separated from the bonds, to the number of thirty-six, and all past due, were, on the 30th day of December, 1878, purchased on the public exchange, at Frankfort-on-the-Main, by the firm of Hazard Speyer Ellissen, of which firm the defendants Gustavus and George Speyer, and Ignace Shuster were members, and who severally resided at Frankfort-on-the-Main, where the business of the firm was conducted. The coupons were purchased in the regular course of business on the exchange from one Leopold Gompertz, a reputable merchant of Frankfort, and a member of the exchange, for the sum of $4,503\frac{60}{100}$ marks, at the rate of $4\frac{17}{100}$ marks per dollar, which was the full market value of the coupons.

The purchase was made honestly and in good faith, without notice or suspicion that the plaintiff, or any person other than

the seller, Gompertz, claimed to be the owner or to have any title or claim in or to the coupons, or that the same had been at any time stolen from the true owner.

After having purchased the same, Hazard Speyer Ellissen transmitted the coupons to the defendants, composing the firm of Speyer & Co., doing business in the city of New York, for collection. The defendant Bonn, with the persons who form the European firm of Hazard Speyer Ellissen, constitute the partnership of Speyer & Co., doing business in New York.

The defendant Bonn, who alone answers the complaint, resides within the state of New York, and the plaintiff, at the time her bonds were stolen, was a citizen of the United States, and at the commencement of this action resided in the state of New York. Upon receipt of the coupons in the city of New York, Speyer & Co., caused the same to be presented for payment at the office of the railroad company, and were there informed that the plaintiff claimed to be the owner thereof, and had notified them that they had been stolen from her; but Speyer & Co., insisting, the railroad company received the coupons, which they have ever since retained, and gave to Speyer & Co., its check for $1,080 gold, the amount thereof, upon the National Bank of New York, the check being payable to the order of Speyer & Co. The check was duly presented by Speyer & Co. for payment to the bank upon which it was drawn, but payment of the same was refused and the check has never been paid in whole or in part, and is still held by Speyer & Co.

The payment of the check by the bank was stopped by an injunction obtained in this action, the bank as well as the railroad company being made parties defendant.

Upon this summary of the principal facts it seems quite clear, under the law of this state, that the plaintiff's title to the coupons was wholly unaffected by the purchase of them made by Hazard Speyer Ellissen, in Frankfort.

There is nothing to impeach the good faith or honesty of

the purchasers, but that transaction, the coupons being over due, cannot avail to invest them with a title without the assent of the plaintiff, the true owner, from whom they were stolen:

After their maturity, the coupons lost the attribute of negotiability, and they dropped into the category of ordinary property, to which title does not pass by mere delivery.

The following cases, among many, illustrate this principle : *Vermilyea* agt. *Adams Express Company* (21 *Wall*, 138) ; *Evertson* agt. *Bank of New York* (66 *N. Y.*, 14). I do not understand the learned counsel for the defendants to claim the law to be otherwise.

But he urges that the taker of stolen coupons, in good faith after maturity, may get a good title, as against the original owner, provided that some person in the chain of title between himself and the true owner had obtained a good title, which has been transmitted to the claimant. In such contention I think the defendants' counsel is entirely right (*Grand Rapids and Indiana R. R. Co.* agt. *Sanders*, 54 *How. P. R.*, 214, 219, *and cases there cited*). But the burden is upon the defendants to prove the fact out of which such legal claim arises.

The plaintiff's title is made out by showing the fact of original ownership and that the property had been stolen. If they reached the hands of a *bona fide* purchaser before maturity, through whom the defendants claim, they must establish it.

Under the evidence the defendants took title after maturity, subject to all the rights and equities of the true owner (*Byles on Bills*, sec. 166 ; *Bank* agt. *Green*, 43 *N. Y.*, 298 ; *Collins* agt. *Gilbert*, 4 *Otto*, 754). It is not proven when, from whom or for what consideration, or under what circumstances, Lagraves, *alias* North, from whom Gompertz purchased the coupons after they had matured, came into possession of them.

He did state, at the time he sold the coupons to Gompertz, that the bonds had been the property of an estate which had

Wylie agt. Speyer.

been for some years in litigation ! There is nothing to show that Lagraves had any better title than the robbers who committed the burglary.

It is also urged on the defendants' behalf that the law of the country in which the property was situated at the time of a sale is paramount, and absolutely determines the validity of the transfer and the title of the transferee. It has been clearly proven in the case that according to the laws of Frankfort, a purchaser of coupons, acting in good faith, for a valuable consideration, obtains a title thereto against all others, whether the purchase be made after or before they fell due. And the fact that the coupons had been stolen from the true owner would not affect the title of an honest buyer. The law and usage prevailing at Frankfort is in conflict with the law of New York upon this subject.

But the rights of these parties must be determined by the law as it obtains in the forum in which this action is brought. A resident in New York, plaintiff, properly sought redress through its legal tribunals. One of the defendants resided in this state, and the property itself, the subject of the action, had been voluntarily brought within this jurisdiction.

A recognition of what is due to other jurisdictions, through comity, cannot call upon this court, under the facts of this case, by preferring the foreign, to disregard our own law to the prejudice of the plaintiff. If any doubt has heretofore existed upon this general subject, I consider it to be dispelled by *Edgerly* agt. *Bush* (81 *N. Y.*, 199). That case furnishes a rule applicable to contentions of this character, and holds that in a case like the present one, the law of the plaintiff's domicil must determine the contest.

Judgment must, therefore, be determined in favor of the plaintiff.

The question which next arises is as to the form of the judgment. Annexed to the findings of fact submitted on the plaintiff's behalf are conclusions of law, in which it is asked

that it be adjudged that plaintiff was the owner of the coupons on the 17th day of May, 1879, and was entitled to the possession of same. To that there can be no objection. But this is followed by a demand for judgment for $1,080, with interest.

In determining whether the plaintiff is entitled to a money judgment against these defendants, the form of the action, as shown by the complaint, must be considered. The action was addressed to the equitable cognizance of the court, an injunction was obtained and a receivership was asked.

Following the allegations of the complaint the relief asked was equitable and *in rem*. That is to say, that the check given by the railroad company might be canceled; that the plaintiff might have judgment against the defendant the railroad company for the delivery to her of the coupons or the proceeds of same — to wit, the sum of $1,080; that the defendants Speyer & Co. be enjoined, pending this action, from presenting the check for payment or demanding payment of the same, or from disposing of the check or its proceeds.

The action was tried as one for equitable relief without a jury at special term. The relief therefore must be equitable only. The action cannot be changed from one of that character into one for legal redress arising out of an alleged conversion.

It is true that the specific equitable relief asked in the complaint is followed by the general prayer for such other relief as to the court shall seem proper. But that must be construed to mean relief of a character kindred to that specifically asked, and which, in an action of this nature, must also be equitable and efficient to secure that which has been adjudged, and to such equitable relief only the plaintiff should be limited.

The plaintiff's counsel must therefore prepare conclusions of law substantially in accord with the relief demanded in the complaint, and should anything further be wanted to render the judgment effective, it must be of the same nature.