ALAN H. COLCORD, Respondent, *v.* BANCO DE TAMAULIPAS, Appellant.

First Department, January 18, 1918.

Bills and notes — inquiry as to funds of drawer — acknowledgment that drawer has requisite funds on deposit does not amount to acceptance of bill — pleading — complaint not stating cause of action — foreign law not well pleaded.

Where a foreign bank, upon which a bill of exchange was drawn, on receiving a telegram from another bank which was contemplating the purchase of the bill inquiring whether the defendant would pay a draft of the drawer for a certain sum of money, replied by telegram that such draft was good, it did not thereby accept the draft and is not liable thereon.

The defendant's reply stating that the draft was good meant only that the drawer had the amount of the draft at that time on deposit with the defendant and did not bind it to hold the funds, or amount to an acceptance.

A drawee cannot be held liable upon a contract of acceptance external from the bill unless the language used clearly and unequivocally imports an absolute promise to pay.

The plaintiff cannot recover on a second cause of action restating the facts aforesaid and also alleging, in substance, that under the law of Mexico, where the draft was drawn and where the drawee resided, a drawee must accept or refuse to accept on the same day a draft is presented for that purpose, and if the drawee allows the day to pass without returning the draft he is liable for its payment, and that the drawee retained the draft for a much longer period, where the allegations do not show that said law was in effect when the transactions occurred. A demurrer will be sustained to a complaint which merely sets forth the facts aforesaid.

PAGE, J., dissented, with opinion.

APPEAL by the defendant, Banco De Tamaulipas, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 9th day of July, 1917, overruling its demurrers

to the first and second causes of action set forth in the second amended complaint.

*Eugene Congleton* of counsel [*Rounds, Hatch, Dillingham & Debevoise*, attorneys], for the appellant.

*George H. Porter* of counsel [*Rudd, Wood & Molloy*, attorneys], for the respondent.

Dowling, J.:

The facts upon which the two causes of action herein are based are set forth in the complaint as follows: The First State Bank and Trust Company (assignor of the claim in question to plaintiff) is a banking corporation organized under the laws of the State of Texas, and having its principal place of business at Laredo, Tex. It is hereinafter referred to as the State Bank. Defendant is a banking corporation organized under the laws of the Republic of Mexico and having its principal place of business at Tampico in the State of Tamaulipas, Republic of Mexico. On February 28, 1914, C. Barreda, as municipal president of the city of Nuevo Laredo, a municipality in the Republic of Mexico, made a certain draft or bill of exchange in writing. This (as well as all the other writings hereinafter referred to) was in the Spanish language, and translated into English read:

" $5,000.00 (Mexican dollars)
" C. Laredo, Tamaulipas, *Feb.* 28, 1914.
" At three days sight pay by this Bill of Exchange, in this city, to the order of The First State Bank of Laredo, Texas, the sum of Five thousand Mexican dollars.
" Value which you will charge with or without notice to account of

To the Bank of Tamaulipas,     C. BARREDA,
Tampico, Tampas     Municipal President.
" (Endorsement)     (Seal)     Municipal Government
    Constitutional of Laredo, Tamaulipas.
' (Written). C. Laredo Tampas Feb. 28, 1914, C. Barreda (50 cent Mexican stamp affixed)."

Said draft was presented to the State Bank for purchase, which thereupon sent the following telegram to defendant:

"LAREDO, TEXAS, *March* 3, 1914.
"BANK OF TAMAULIPAS, TAMPICO, TAMPS., MEX.:

"Please telegraph us immediately if you will pay a draft signed C. Barreda, Municipal President Nuevo Laredo, for five thousand Mexican dollars.

"FIRST STATE BANK & TRUST CO."

To this defendant replied as follows:

"TAMPICO, MEXICO, *March* 5, 1914.
"FIRST STATE BANK & TRUST CO.,
          "Laredo, Texas:

"Draft C. Barreda, Municipal President Nuevo Laredo, for five thousand Mexican dollars is good.

"BANCO DE TAMAULIPAS."

On the same day defendant wrote the State Bank as follows:

"TAMPICO, TAM. MEX., *March* 5, 1914.
"FIRST STATE BANK & TRUST CO.,
          "Laredo, Texas:

"DEAR SIRS.— On this date and through the same method we have answered your telegram relative to Dr. C. Barreda's draft for five thousand Mexican dollars, which we confirm as per enclosed transcript.

"Yours truly,
"BANCO DE TAMAULIPAS,
"P. ASSEMAT,                              J. J. DIAS,
     "*Mgr.*                                   *Cashier.*"

The transcript inclosed was as follows:

"Transcript of the telegram which the Banco de Tamaulipas addresses to First State Bank and Trust Co., Laredo, Texas, on March 5, 1914.

"Draft C. Barreda, Mayor of New Laredo, for five thousand dollars is good."

The State Bank relying upon the faith of the correspondence quoted, bought the draft in question, paying 5,000 Mexican dollars therefor, and after indorsing it, so as to make it payable to any bank, banker or trust company, transmitted the draft so indorsed to defendant and duly presented it and demanded payment. Thereafter defendant telegraphed to the State Bank:

" TAMPICO, *March* 19, 1914.

" We return remittance 9336 because it is not correct. We are writing.          BANCO DE TAMAULIPAS."

The letter which followed was in these terms:

" TAMPICO, TAM., MEX., *March* 19*th*, 1914.
" FIRST STATE BANK AND TRUST CO.,
          " Laredo, Texas:

" DEAR SIRS.— We confirm our telegram of even date as per enclosed copy.

" Accordingly we return your remittance No. 9336 for its lacking of two signatures, to wit: Faustino Garza's as Finance Commissioner and the signature of Dr. Adolfo Salinas Puga as Health Commissioner of Nuevo Laredo. It also lacks the official seal of the municipal corporation.

" Once the above requisites having been fulfilled we will have no objection to honoring the remittance herewith returned.

" We have charged you with $5.54 for telegram expenses. We are yours respectfully,
          " BANCO DE TAMAULIPAS.
" P. ASSEMAT,          J. J. DIAZ,
     " *Manager.*          *Cashier.*"

Inclosed therewith was a copy of said telegram of March 19, 1914.

The State Bank procured the signing of the draft by the two officials referred to in the letter and also the affixing of the seal of the municipal corporation thereto and in this condition it was returned to defendant and again duly presented for payment. The defendant retained the draft in its possession from March 24, 1914, to December 8, 1914, ignoring repeated demands to pay the same between March 29, 1914, and October 31, 1914, on which latter date it refused payment and still refuses to pay the same. It is alleged that when said draft was accepted and when it was presented for payment the drawer thereof had deposited with the defendant funds sufficient to pay the same and which had been so deposited for that purpose.

The first cause of action is based on the theory that defendant's telegram of March fifth constituted an acceptance of the draft in question and that defendant was, therefore, liable

to pay the same. I do not believe that defendant's telegram of March fifth can be interpreted to be an acceptance of the draft in question, nor as a promise to accept the same. The State Bank telegraphed defendant an explicit question as to whether defendant would pay a certain described draft. Defendant did not reply to this question directly, nor does it appear that it was under any duty or obligation so to do. The State Bank did not say in its telegram that it was about to buy the draft upon the faith of defendant's reply. Defendant replied only that the draft was good, which reasonably meant only that C. Barreda, as municipal president of Nuevo Laredo, then had on deposit with defendant at least the sum of 5,000 Mexican dollars, but gave the State Bank no right to assume that defendant would hold the funds to meet the draft or would itself accept or pay the draft. On the contrary, the very form of the reply, not answering directly the question as to whether defendant would pay the draft, was sufficient to put the State Bank on its guard and cause it to either require an explicit answer from defendant as to whether it would accept and pay the draft, or to proceed further at its own risk. The defendant had no control over the State Bank's transactions with Barreda and it was the business of the State Bank to protect itself in its dealings with him and to make certain that the draft would be accepted by defendant before it parted with its money on the faith of the draft. An acceptance is a contract and there are no words used by defendant in the telegram which can be interpreted to mean that it agreed to accept the draft. In *First National Bank of Atchison, Kansas,* v. *Commercial Savings Bank* (74 Kan. 606) an acceptance was sought to be based upon the following telegrams passing between the parties:

"ADRIAN, MICH., *October* 15, 1903.
" FIRST NATIONAL BANK, ATCHISON, KAN.:
" Is J. F. Donald's check on you $350. good?
"COMMERCIAL SAVINGS BANK."

"ATCHISON, KAN., *October* 15, 1903.
" COMMERCIAL SAVINGS BANK, ADRIAN, MICH.:
" J. F. Donald's check is good for sum named.
"FIRST NATIONAL BANK."

In that case Donald was a depositor in the Kansas bank and drew a check upon it for $350 to a payee, who indorsed and delivered it to a third party, who in turn indorsed and delivered it to the Michigan bank. Donald stopped payment on the check before it was presented for payment, and the Michigan bank sued the Kansas bank for the face of the check and interest, claiming it had been accepted in writing, and that it had been purchased for value on the faith of such acceptance. The court held that the drawee of a check could not be held liable upon a claimed contract of acceptance, external to the bill, unless the language used clearly and unequivocally imported an absolute promise, and that the response that a check was " good for sum named " was not such a promise. In that case the reply was strictly responsive to the question, but the court said: " It indicates no clear intention to make Donald's check good whenever presented and whatever the condition of his account. It is entirely consistent with the simple purpose to state Donald's standing at the bank on the day of the telegram. It fairly means: ' Donald's account is now sufficient to meet a check for the sum named.' The writings are not equal to the unambiguous and unequivocal ' Will you pay? ' and ' We will pay.' " So also in *Kahn* v. *Walton*, 46 Ohio St. 195, it was held that while an affirmative answer by the bank to a general inquiry whether checks of a person named for a specified sum are good is information that such person has on deposit, subject to check, money to that amount, it does not constitute an acceptance or certification of or otherwise create an obligation on the bank to pay, checks which the inquirer may then hold. The telegraphed query in that case was, " Are M. A. Walton's checks for $2,000 good? " to which the bank answered: " Yes, sir." In the course of its opinion the court said: " It is manifest there was no acceptance, or certification of the checks in question in this case. The telegraphic correspondence between the bank and Kahn's agent amounted to no more than an assurance that valid checks to the amount stated, drawn by Walton, or that might be drawn by him were then good. No particular checks were mentioned in the inquiry, nor any intimation given that the enquirer had received, or was about to receive such checks; nor had the

bank any means of identifying the checks to which the inquiry related. Its telegram, therefore, did not commit the bank to the payment of any particular check. At most, it was information that Walton had, at its date, money on deposit to the amount stated, subject to check. *Espy* v. *Bank of Cincinnati*, 18 Wall. 604."

In *Myers* v. *Union National Bank* (27 Ill. App. 254) the query telegraphed to the defendant bank was, " Will drafts for thirty-eight hundred dollars, made by J. R. Snyder on you be paid if presented Monday?" to which the reply was sent: " Drafts named are good now." The funds of the drawer having been paid out to meet other checks, it was sought to hold the defendant for the drafts in question as upon a virtual acceptance for certification. The defendant was held not to be liable, as it had not accepted the drafts. The court said: " An acceptance is a contract, and does not differ from other contracts in the essential requirement of a meeting of minds. A bank is not bound to accept by telegram the checks or drafts of its depositors, although in possession of funds to pay. Its duty in such cases is to accept a draft, or pay a check, only on presentment. One relying on a telegram as an acceptance, should see to it that the language used will, at least, fairly bear the meaning. *Rees et al.* v. *Warwick*, 3 Eng. C. L., 467."

These cases support the general rule as laid down in Daniel on Negotiable Instruments (6th ed., vol. 1, p. 600): " There is no doubt that, in the absence of statutory interdiction, an acceptance may be upon a separate paper, as in a letter, for instance, as well as upon the bill itself. The drawee cannot be held liable upon a contract of acceptance external to the bill, unless the language used clearly and unequivocally imports an absolute promise to pay. Thus a written promise to accept an existing bill, or ' that it shall meet with due honor; ' or that the drawee ' will accept or certainly pay it,'— or any other equivalent language, has been held to amount to acceptance. But if the language be equivocal — if it be merely stated ' Your bill shall have attention,' it is not sufficient."

The Negotiable Instruments Law of New York (Consol. Laws, chap. 38 [Laws of 1909, chap. 43], § 222) provides

that " Where an acceptance is written on a paper other than the bill itself, it does not bind the acceptor, except in favor of a person to whom it is shown and who, on the faith thereof, receives the bill for value."

It follows as the result of the reasoning of the foregoing cases that the State Bank had no right to rely on defendant's telegram that the draft was good in purchasing it, but should have insisted on a direct answer to a question whether defendant would accept or pay the draft. Not having done so, and defendant not having said in its telegram that it would either accept or pay the draft, the latter is not liable. The case of *Garrettson* v. *North Atchison Bank* (39 Fed. Rep. 163) is not controlling here, for in that case the question was, " Will you pay James Tate's check on you twenty-two thousand dollars? Answer," and the reply was: " James Tate is good. Send on your paper." In its opinion the court laid stress on the last words, " Send on your paper," as clearly implying that it was to be sent on for payment and not merely for acceptance. No such words were used in the case at bar. The demurrer to the first cause of action should have been sustained.

The second cause of action, after restating all the facts alleged in the first cause of action except the assignment of the claim and the retention of the draft and refusal to pay same by defendant, sets forth that defendant when the original draft was presented to it for acceptance and for payment, failed and neglected to accept or pay it; that the State Bank caused the additional signatures and municipal seal to be affixed to the draft as requested by defendant in its letter of March 19, 1914, and again on March 28, 1914, the State Bank presented the draft to defendant " for formal acceptance and also for payment;" that defendant had promised to formally accept and pay the draft (realleging the original telegram and the reply thereto), but instead refused and still refuses to keep its said promise; that defendant retained the draft in its possession from the time of its presentation until December 8, 1914, and during the whole of said time failed to formally accept or pay the draft although repeated demands for payment were made, until October 31, 1914, when it notified the State Bank of its refusal to formally accept or pay " said draft." It is then averred:

" *Sixth.* That in and by the law of Mexico it was then and there provided that when a draft of the character of the draft herein set forth is presented for acceptance, the drawee must accept it or refuse plainly his acceptance on the same day in which the bearer presents it for that purpose. And it is also the law of Mexico that if the drawee allows the day to pass without returning such draft, he will be liable for its payment."

The assignment of this cause of action to plaintiff is then alleged. This cause of action proceeds upon the theory that the telegram of March fifth was not an acceptance but an agreement to accept, for the breach of which defendant is equally liable. For the reasons heretofore assigned, I do not believe the telegram in question was an agreement to accept, any more than it was an acceptance. In so far as plaintiff pleads upon the alleged telegram as an agreement to accept, I believe the complaint is demurrable. Plaintiff does not set forth any acts done by his assignor, liability assumed by it, or moneys paid out by it, after the receipt of the defendant's letter of March nineteenth, nor does he seek to predicate any liability thereupon. Had the State Bank paid out its moneys only after the receipt of that letter, a very different question would have been presented. The statute law of Mexico sought to be pleaded not only raises a new theory of defendant's liability inconsistent with the remaining allegations of the second cause of action (which are based solely on the ground that the original telegram of defendant was an agreement to accept), but that law is so inartificially pleaded that it is not made applicable to the state of facts set forth. It is said that " in and by the law of Mexico it was then and there provided " that the drawee must accept or refuse acceptance at a certain time, but whether this law was in effect when the transactions in question occurred does not appear. It is also alleged that " it is also " the law of Mexico that if the drawee allows a day to pass without returning the draft, he will be liable  But this allegation is also vague as to time and it does not clearly show that the law was to the effect quoted when the transactions between the parties were had. For all these reasons, the demurrer to the second cause of action should also have been sustained.

The order appealed from will be reversed, with ten dollars costs and disbursements, and the demurrers to the first and second causes of action sustained, with ten dollars costs, with leave to plaintiff to serve a further amended complaint as to said causes of action on payment of said costs.

CLARKE, P. J., LAUGHLIN and SMITH, JJ., concurred; PAGE, J., dissented.

PAGE, J. (dissenting):

The sufficiency of the allegations of the first cause of action depends upon whether the exchange of telegrams of March third and fifth constitutes an acceptance of the draft so that the defendant became primarily liable thereon. In my opinion it does. If the draft had been presented to the defendant and some one duly authorized had written " good " upon the face thereof and signed the name of the defendant, there could be no doubt but that this would be equivalent to an acceptance of a negotiable bill of exchange in favor of the holder for the amount specified therein. (*Meads* v. *Merchants' Bank of Albany*, 25 N. Y. 143, 146.) The acceptance to be binding in favor of a holder who has parted with value upon the faith thereof, does not have to be upon the instrument itself. The Negotiable Instruments Law provides:

" § 222. Acceptance by separate instrument. Where an acceptance is written on a paper other than the bill itself, it does not bind the acceptor except in favor of a person to whom it is shown and who, on the faith thereof, receives the bill for value." (Consol. Laws, chap. 38 [Laws of 1909, chap. 43], § 222.)

A telegram satisfies the requirements of the statute; it is a writing and the method of its transmission, whether by mail or telegraph, is immaterial. (*Molson's Bank of Montreal* v. *Howard*, 40 N. Y. Super. Ct. [8 J. & S.] 15, 20.) The telegram was understood to be an acceptance and relying thereon plaintiff's assignor discounted it. Fairly construed I do not believe that the telegram of the defendant merely meant that C. Barreda, as municipal president of Nuevo Laredo, then had on deposit with defendant at least the sum of 5,000 Mexican dollars. The inquiry of plaintiff's assignor was: " Please telegraph us immediately if you will

pay a draft signed C. Barreda, Municipal President Nuevo Laredo, for five thousand Mexican dollars." This was not an inquiry as to the validity of the draft or as to the sufficiency of the account of the depositor. It was an explicit request for an acceptance of a specified draft for a definite amount. The answer returned was such that had it been placed on the draft it would have constituted an acceptance. In my opinion it should be so construed.

A similar case to the one at bar is *Garrettson* v. *North Atchison Bank* (39 Fed. Rep. 163), cited by Mr. Justice DOWLING. The opinion in the Circuit Court of Appeals *North Atchison Bank* v. *Garretson* (51 Fed. Rep. 168) did not lay stress on the words " Send on your paper." That court said: " The question put to the bank, and to which an answer was requested was not whether Tate was good but whether the bank would pay his check for a given sum. It cannot be supposed that the bank intended to return an ambiguous answer for the purpose of misleading the party asking the question and, therefore, if the answer had been limited to the words, 'Tate is good,' there would be ground for holding that the bank thereby intended an affirmative answer to the categorical question put to it; but all doubt is put at rest by the remaining words of the answer to wit, ' Send on your paper ' " (p. 170). In the case at bar, the defendant replied that " Draft C. Barreda, Municipal President, Nueva Laredo, for five thousand Mexican dollars is good," the plaintiff's assignor was justified in believing that the defendant meant that if the plaintiff's assignor sent in the draft it would pay it, and where on the faith of that promise the plaintiff's assignor purchased the draft, the defendant became liable for the payment of the draft.

The second cause of action sufficiently states a promise of acceptance, not alone from the facts above mentioned, but also from the later occurrence. When the draft was presented to the defendant bank it returned it, explaining that there were two signatures and the official seal of the municipality lacking. The letter further said: " Once the above requisites having been fulfilled we will have no objection to honoring the remittance herewith returned." This letter is

evidence that the defendant considered itself bound by the telegram of March fifth.

The plaintiff's assignor secured the two signatures and the municipal seal and returned the same. It is urged that there is no consideration for this promise as the plaintiff's assignor had already paid the money for the draft. In my opinion the performance of the condition imposed was a sufficient consideration for the agreement to accept.

The fact that a draft is discounted before acceptance does not render the acceptance without consideration. " It is the settled law of this State that the right of the holder of a draft against the acceptor is not affected by the mere fact that he discounted the draft before acceptance." (*Iselin* v. *Chemical Nat. Bank*, 16 Misc. Rep. 437, 438.) After the draft was returned in its completed form the defendant retained it for several months. These facts would afford a consideration because the plaintiff's assignor was deprived of the right to immediately proceed against the drawer; forbearance is necessarily granted. (*Mechanics' Bank* v. *Livingston*, 33 Barb. 458.)

In my opinion the order overruling the demurrers to both causes of action should be affirmed.

Order reversed, with ten dollars costs, and motion denied, with ten dollars costs, and demurrers sustained, with leave to plaintiff to amend on payment of costs.