IRWIN WEISSMAN and Another, Appellants, *v.* BANQUE DE BRUXELLES, a Foreign Corporation, Respondent.

First Department, November 4, 1927.

**Corporations — officers — action to recover from Belgian bank check payable to corporation and deposited by president in personal account — defense that law of Belgium applies and that no liability exists under that law is good — defense should have alleged that law of Belgium was in force at time of transaction.**

The defense in an action to recover from a Belgian bank the amount of a check payable to a corporation and deposited by its president in his personal account, that the transaction occurred in Belgium and that under the laws of Belgium the bank was under no l'ability or duty to inquire whether or not the president had authority to use the check for his personal benefit, is a good defense if sustained, since the transaction having taken place in Belgium, the law of that country is controlling.

However, the defense should have alleged also that the law upon which the defense is based was in existence in Belgium at the time of the transaction.

APPEAL by the plaintiffs, Irwin Weissman and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 15th day of February, 1927, denying their motion to strike out an affirmative defense.

*Sidney S. Bobbé,* for the appellants.

*W. Rice Brewster* of counsel [*Murray, Aldrich & Roberts,* attorneys], for the respondent.

O'MALLEY, J. The affirmative defense attacked on this motion pleads certain alleged laws of the Kingdom of Belgium. The complaint contains two causes of action: (1) for money had and received, and (2) for conversion.

The defendant bank is a Belgian corporation and is located and doing business in Brussels. It has no New York office. Its liability to the plaintiffs, who sue as assignees of the receiver of a New York corporation, is based upon the charge that it wrongfully credited to the personal account of the president of said corporation, one of its depositors, the proceeds of a check drawn to the order of the corporation, delivered to it, and transferred to the defendant by the indorsement of such officer in his official capacity and subsequently by personal indorsement. The complaint alleges that the transfer of the check to the defendant " was without authority in law or in fact and was in all respects null and void, of which fact the defendant had knowledge, or, upon reasonable inquiry, would have had knowledge."

Concededly under the law of this State, a transfer, in the circumstances set forth in the complaint, of the proceeds of a corporate check of the character here described, would impose liability upon the defendant. It would accept such transfer at its peril to ascertain whether the president of the corporation had authority to indorse and, by such indorsement, transfer the money to be paid thereon to his personal account. (*Wagner Trading Co.* v. *Battery Park National Bank*, 228 N. Y. 37, 41.)

The defense relied upon is that the check was received and its proceeds credited to the account of its depositor in good faith, and that " there is no provision under the laws of the Kingdom of Belgium which imposes any liability or duty of inquiry on a bank which receives for collection and credit to the account of the indorsee a check drawn payable to the order of a corporation and indorsed by that corporation to the order of an individual officer thereof." If the laws of Belgium apply, this defense, therefore, may not be stricken out for insufficiency.

It is clear that whatever rights the defendant acquired to the check and its proceeds, came through its transfer by indorsement. As the defense demurred to alleges this to have taken place in Belgium, the truth of such allegations must be assumed, notwithstanding that on the back of the check under the words of the indorsement to the defendant are noted the words " Lisbon, June 1, 1923."

It is a general rule of conflict of laws that the situs of a given transaction determines the law applicable thereto. In England this has been held to apply to an authorized transfer of a negotiable

instrument by indorsement. (*Bradlaugh* v. *de Rin*, L. R. [1868] 3 C. P. 538; *Alcock* v. *Smith*, L. R. [1892] 1 Ch. 238.) And the rule of these decisions seems now to have been codified in the form of the Bills of Exchange Act, 1882 (45 & 46 Vict. chap. 61, § 72, subds. 1, 2; Dicey's Confl. Laws [4th Eng. ed.], 658, rule 172.) (See, also, *Embiricos* v. *Anglo-Austrian Bank*, L. R. [1905] 1 K. B. 677.)

So, too, it is said in Minor on Conflict of Laws (p. 392): " So far as concerns the executed transfer represented by the indorsement, it is an instance of the voluntary transfer of personal property, the ' proper law ' to govern which we have seen to be the law of the place where the transfer is made."

Wharton on the Conflict of Laws, in his general discussion of negotiability (3d ed. § 447-b, p. 965) states (p. 966): " It may be pointed out in this connection, however, that according to the weight of authority, although there is some conflict upon the point, the negotiability of an instrument, as affecting the respective rights of one who has been fraudulently deprived of it, and one who has obtained the same from or through a third person who had no authority to transfer it, depends upon the law of the place where the transfer to the present holder took place, and not necessarily upon the substantive law of the original contract."

The learned author last quoted cites some authorities to the contrary of this rule, and among them one relied upon by the appellants herein (*Wylie* v. *Speyer*, 62 How. Pr. 107). But this was a Special Term decision and it is the only New York case called to our attention which involves a negotiable instrument. The decision is based upon *Edgerly* v. *Bush* (81 N. Y. 199). The latter decision was not concerned with negotiable paper, but with chattels. The plaintiff had title to a team of horses by virtue of a chattel mortgage given him by the owner in this State. The latter removed them to Canada, where, in some undisclosed manner, they came into the possession of a dealer who sold them in the open market. The purchaser removed them to this State, but upon being threatened with suit, returned them to Canada and sold them to the defendant, who later returned to this State but left the property without the jurisdiction. There was nothing to show bad faith or guilty knowledge on the part of the purchasers in Canada, and under the rule of market overt which there applied, good title was obtained by such purchasers and particularly by the defendant. While it was there held that the law of New York and not of Canada applied, it is to be noted that the dispute there was between two citizens of this State. This was emphasized in the opinion written by FOLGER, Ch. J., who said, among other things: " We are not required to show comity to that extent;

especially as it is to our citizens alone that we are administering justice."

Moreover, in that case the chattels in question had actually been in this jurisdiction and had been surreptitiously removed. Upon the state of the pleadings before us there is nothing to show that the check in question was ever within this State. The allegation is that it was delivered to the corporation, but whether that delivery was made here or in a foreign jurisdiction is not disclosed. Hence the surreptitious removal which appears to be part of the basis of the decision in the *Edgerly* case, is not here an admitted fact. (See Professor Beale's article, 40 Harv. L. R. 805.)

As pointed out by FOLGER, Ch. J., in the *Edgerly* case, whether comity requires the application of the law of a foreign jurisdiction depends upon the facts of each particular case. We are of opinion that, under the facts disclosed by these pleadings, comity should be here extended so as to apply the law of the *lex loci contractus;* and that the general rule as stated in Wharton on the Conflict of Laws (*supra*), rather than the narrow rule promulgated in *Wylie* v. *Speyer,* should be followed. As already observed, we are here concerned with a negotiable instrument, the transfer of which, in the interests of trade, is to be facilitated and protected. Further, it does not appear that the check ever was within this jurisdiction. For all that appears the president of the corporation was in lawful possession thereof. The check was transferred in Belgium. It was not payable in this State, but at the Treasury of the United States in Washington.

It is our conclusion, therefore, that the defense sought to be alleged will be sufficient. However, as the defense fails to allege that the law of Belgium relied upon was in force and effect at the time of the transaction, it is in this respect insufficient. (*Colcord* v. *Banco De Tamaulipas,* 181 App. Div. 295.)

The order should, therefore, be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs, but with leave to the defendant to plead anew within ten days after service of a copy of the order to be entered hereon, upon payment of said costs.

DOWLING, P. J., MERRELL, MARTIN and PROSKAUER, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs, with leave to the defendant to serve an amended answer within ten days from service of order upon payment of said costs.